UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NARIN MARKET, LLC,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

C. A. No. 13-535-M

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Narin Market, LLC challenges its permanent disqualification from the Supplemental Nutrition Assistance Program ("SNAP") by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). Narin Market was banned from SNAP for engaging in trafficking of Electronic Benefit Transfers ("EBT"). Trafficking is defined as "[t]he buying, selling, stealing or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards ... for cash or consideration other than eligible food." 7 C.F.R. § 271.2; 7 U.S.C. § 2021(b)(3)(B).

Before the Court is the United States' motion for summary judgment, arguing that the USDA's decision to disqualify Narin Market was soundly supported by the record and neither arbitrary nor capricious as a matter of law. (ECF No. 5.) Narin Market objects. (ECF No. 13.) For the reasons stated below, the Court GRANTS the United States' motion.

I.    **FACTS**

Narin Market is a medium sized, neighborhood grocery store located at 759 Potters Avenue in Providence, Rhode Island. Narin Market accepted payment for eligible food items through the SNAP, a program designated by Congress to alleviate hunger and malnutrition

among poor households. Eligible participants receive an EBT card, which is linked to their SNAP account, containing funds that they can use to purchase food. The card is swiped at the store at the time of purchase, the customer enters a personal identification number, and the amount is deducted from their monthly SNAP benefits.

The FNS is able to monitor the SNAP and EBT transactions in order to detect and eliminate fraud. It uses an Anti-Fraud Locator using Electronic Benefit Retailer Transactions ("ALERT") program to detect trafficking. Narin Market appeared on a USDA ALERT Watch List in or around April 2012. FNS identified five categories of irregular transaction patterns – 1) rapid sets of purchases by different households made too rapidly to be credible, 2) rapid and repetitive transactions by the same households; 3) the depletion of the majority of monthly benefits in one transaction or within a short period; 4) an unusual number of manual-key entered transactions; and 5) a large volume of high dollar transactions. On August 17, 2012, an FNS reviewer visited Narin Market to evaluate the market's EBT transactions.

On August 24, 2012, FNS sent a letter to Narin Chhoun, Narin Market's owner, informing him that FNS was charging Narin Market with trafficking and that permanent disqualification was being considered as a penalty. The letter identified the irregular transaction patterns and advised Mr. Chhoun of his right to respond within ten days of the letter. Mr. Chhoun did not respond to the letter. FNS sent Mr. Chhoun another letter approximately a month later, notifying him that Narin Market was permanently disqualified from the SNAP. Mr. Chhoun requested administrative review and his counsel provided evidence to rebut the allegations of EBT trafficking. In response to the evidence of rapid sets of purchases, Narin Market asserted that customers often group their purchases in order to receive a discount for orders exceeding forty dollars. The rapid and repetitive transactions occurred because customers

sometimes forgot to purchase items and had to make a second transaction directly after the first. Narin Market asserted that the high dollar transactions that depleted a household's monthly benefits occurred mainly on the weekends during the course of bulk item purchases, such as fish and rice. Those large purchases were of items that are not available elsewhere in the area and so customers would travel distances to shop at Narin Market. The manual keyed transactions occurred whenever a customer presented a card that was bent or damaged because those cards could not be scanned.

Overruling these rebuttals, the USDA sustained the permanent disqualification. The Administrative Review Officer ("ARO") found that Narin Market's explanations were not credible because it did not offer the available depth of stock, high priced inventory, or specialty food bulk items that would justify such large and rapid EBT transactions. The ARO also found seventy-one stores in the same geographic area authorized to accept SNAP. It also determined that the average EBT transaction in a similar sized grocery store in Rhode Island was $22.66 and Narin Market's average was $38.29. The ARO also reviewed six comparable grocery stores and four of the six within a one-mile radius of Narin sold comparably priced Asian specialty items. The ARO concluded that Narin Market engaged in trafficking in accordance with 7 C.F.R. § 271.2 and affirmed its decision to disqualify Narin Market from the program.

## II. ANALYSIS

Summary judgment can be granted only when the Court finds that there is no genuine issue of material fact and that the undisputed facts give rise to an entitlement to judgment as a matter of law. *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his [or her] favor. *Id.* However, the non-moving party "must point to 'competent

evidence' and 'specific facts' to stave off summary judgment." *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). A summary judgment motion cannot be defeated by "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010).

The Court must conduct a *de novo* review to "determine the validity of the questioned administrative action." 7 U.S.C. § 2023(a)(15). This *de novo* review, however, is limited to the USDA's determination of whether a SNAP violation took place. *Broad St. Food Mkt., Inc. v. United States*, 720 F.2d 217, 220 (1st Cir. 1983); *Objio v. United States*, 113 F. Supp. 2d 204, 208 (D. Mass. 2000). If the Court finds that the USDA's finding was correct, review of the sanction that the USDA imposed is limited to whether that sanction was arbitrary or capricious. *Id.* A store disqualified from participating in SNAP bears the burden of proving, by a preponderance of the evidence, that the USDA's decision was "invalid." *Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010).

The Court has reviewed the entire administrative record below, including Narin Market's rebuttals to the USDA's conclusions that it trafficked in EBT benefits, and the USDA's decision to disqualify Narin Market *de novo*. It is important to note that Narin Market does not dispute any of the facts that the USDA presented in its decision or in its motion currently before the Court.[1] Narin Market has not submitted any evidence to rebut the store-generated statistical evidence USDA used in its determination that Narin Market was trafficking. As such, the Court finds that Narin Market has failed in its burden.

---

[1] Narin Market does argue that FNS erred in detailing the highest priced items in the store – that it carries bags of rice and boxes of fish that were more expensive than the items quoted by the government. (ECF No. 13 at 20.) The Court finds that the copious and persuasive statistical evidence the USDA presented negates the marginal value of this minor factual dispute.

4

What Narin Market has provided the Court is explanations, mimicking those provided to the USDA, for the statistical data collected from the store during the review period that supported the USDA's disqualification. In response to the USDA's statistics showing multiple transactions done too rapidly to be credible, Narin Market argues that the USDA never stated that these multiple transactions could not be done, just that it would be difficult to do and that the USDA did not consider that Narin Market's counter employees were experienced and proficient in processing orders quickly. In response to the issue of multiple transactions on individual accounts in short periods, Narin Market asserts that it offered unadvertised promotions wherein customers would receive a free item if they spent a set amount of money so they would break up their purchases into separate orders to get more free items. It also explains that some of its customers travel to and shop at the store together, adding items to each other's orders. Against the evidence of large numbers of customers depleting their EBT accounts in a single transaction, Narin Market argues that there are disputed issues of fact because it carries high cost items that its customers buy in bulk, justifying significant total amounts and that most of the transactions were made on the weekends when the market is busiest. In response to the USDA's findings that EBT transactions at the store were excessively large, Narin Market refutes that the lack of counter space and shopping carts limits a customer's ability to make large purchases because counter space is not always limited and other employees are available to bring large, expensive items to a customer's car. It also argues that some of the transactions occurred during the Cambodian New Year, justifying larger purchases. Finally, in response to the excessive number of hand entered (as opposed to scanned in) transactions, Narin Market explains that the numbers cited are not significant.

These explanations are unconvincing, conclusory, and very speculative in the face of the USDA's statistics. Narin Market cannot sustain its burden by surmising what its customers may or may not be doing or by making unreasonable and impractical speculations about how hundreds of dollars of transactions could be completed between several seconds or minutes in a medium grocery store with minimal counter space, no shopping carts, and a manual cash register system. *See Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000) (granting summary judgment even where plaintiff's explanations of his customer's spending pattern "may tend to negate some of the inferences from the EBT data" but do not "sufficiently account for all the suspicious activity.") Narin Market, therefore, fails to raise disputed issues of material fact sufficient to overcome the USDA's statistics and ultimately, its motion for summary judgment.

The transaction data patterns suggest that Narin Market's EBT transactions were made in rapid sequence, were from individual accounts in suspiciously short time frames, were excessively large, depleted or ran down an EBT account, and were manually entered too frequently (without a report of a malfunctioning scanner) to be believed. The Court finds that Narin Market's explanations and rebuttals to the USDA's evidence are implausible and that Narin Market has failed to meet its burden. It has presented no evidence to show that the USDA's decision was invalid – in fact, it has presented no evidence rebutting the data that the USDA collected to prove it was engaged in EBT trafficking.

Now that the Court has found, based on a *de novo* review, that the USDA's finding that Narin Market engaged in trafficking as defined in 7 C.F.R. § 271.2 is valid, it will move on to review the permanent disqualification sanction. The sanction will only be overturned if it was arbitrary and capricious. *Broad St. Food Mkt.*, 720 F.2d at 220. Because the governing regulation, 7 C.F.R. § 278.6(e)(1), requires permanent disqualification for EBT trafficking, the

Court cannot find that the USDA's sanction was arbitrary or capricious and upholds Narin Market's permanent disqualification.

Based on the undisputed evidence in the record and for the reasons stated herein, the USDA's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

May 7, 2014